Matter of Melissa MM. v Barrett LL.

2026 NY Slip Op 02007

April 2, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Melissa MM., Appellant,

v

Barrett LL., Respondent. (And Three Other Related Proceedings.)

Decided and Entered:April 2, 2026

CV-24-1115

Calendar Date: February 11, 2026

Before: Garry, P.J., Aarons, Ceresia, Fisher And Mackey, JJ.

John A. Cirando, Syracuse, for appellant.

Lisa K. Miller, McGraw, for respondent.

Sandra M. Colatosti, Albany, attorney for the child.

[*1]

Garry, P.J.

Appeal from an order of the Family Court of Delaware County (Gary Rosa, J.), entered June 14, 2024, which, among other things, partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2011). The parties have litigated the issue of custody for virtually the child's entire life, resulting in various custodial arrangements. In 2022, there was a change from joint legal custody and primary physical placement with the mother to the father having sole custody of the child subject to the mother's parenting time. About a year later, the father and the child were residing with the paternal grandmother when, according to the father, the grandmother verbally accosted the child and pulled his hair. The father promptly filed for and received a temporary order of protection against the grandmother in favor of the child. The mother then filed the first of the subject modification petitions, citing the incident with the grandmother and seeking sole custody. In response to her petition, Family Court granted the mother temporary physical custody of the child and ordered a Family Ct Act § 1034 investigation, which found the allegations against the grandmother to be substantiated.FN1 By the time the mother's petition was arraigned, the father had ceased living with the grandmother and had obtained new housing. Several days after arraignment, the mother filed a second modification petition, alleging that she was having difficulty facilitating proper health care for the child due to conflicts with the father, including his refusal to administer prescribed supplements. The same day, the father petitioned to terminate the temporary order based upon his change of residence. He subsequently filed a second petition to the same end, alleging that the child had expressed thoughts of suicide and increased anger since back in the mother's care.FN2 Following fact-finding and Lincoln hearings, Family Court awarded the mother primary decision-making authority with respect to the child's health care and education but otherwise reinstated the prior custodial arrangement. The mother appeals, arguing that awarding her primary residential custody is in the child's best interests.

Initially, even if the resolved domestic incident could no longer constitute the requisite change in circumstances (see Matter of Moore v Sloan, 88 AD3d 1193, 1194 [3d Dept 2011]), the father's alleged refusal to facilitate treatment as recommended by the child's medical providers warranted inquiry into the child's continued best interests (see Matter of Cooper v Williams, 161 AD3d 1235, 1237 [3d Dept 2018]). "Any court in considering questions of child custody must make every effort to determine 'what is for the best interest of the child, and what will best promote [the child's] welfare and happiness' " (Eschbach v [*2]Eschbach, 56 NY2d 167, 171 [1982], quoting Domestic Relations Law § 70). "[T]here are no absolutes in making these determinations" (Eschbach v Eschbach, 56 NY2d at 171), but some relevant factors include the quality of the respective home environments, maintaining stability in the child's life, the child's wishes, and the parents' respective abilities to provide for and guide the child's development and overall well-being (see Matter of Sherab X. v Michelle Y., 244 AD3d 1532, 1533 [3d Dept 2025]; Matter of David JJ. v Tara KK., 240 AD3d 984, 986 [3d Dept 2025]).

Family Court found that each parent maintained stable employment and appropriate housing and wanted what they believe is best for the child. Of central importance was the child's health, both physically and mentally. At the time of the hearing, both parents were committed to monitoring the child's several conditions, facilitating ongoing treatment and securing additional evaluations. Although testimony established that the father declined to administer a supplement regime recommended by healthcare professionals — based upon his belief that the child's physical and mental health concerns could be addressed through alternative means — the record reflects that he did not disregard the child's needs (compare Matter of Andrea C. v David B., 146 AD3d 1104, 1106-1107 [3d Dept 2017]). Most concerning to Family Court, and properly so, was a postpetition social media post by the child expressing suicidal ideation. Although the parents' strained communication makes it difficult to reconstruct precisely how that matter unfolded, the record establishes that their responses — each imperfect — ensured that the child was properly evaluated for acute crisis. According to the father, the child was experiencing heightened anger issues while living with the mother, which was generally corroborated by testimony from one of the child's teachers and his school counselor. The evidence demonstrated that either primary residential placement would afford the child comparable supports for his behavioral challenges and learning disability, and each parent resides within a school district that is a component of the same regional cooperative such that the child's academic program would remain unchanged. Although placement with the father would require a change in pediatric providers from the current school-based practitioner, the record does not suggest that continuity of that particular provider is crucial. Finally, as asserted by the attorney for the child and acknowledged by the mother, the child has expressed a desire to reside with the father, a preference entitled to some weight given his age and emotional circumstances (see Matter of Chad KK. v Jennifer LL., 219 AD3d 1581, 1584-1585 [3d Dept 2023]).FN3 In view of the foregoing, we find that Family Court's award of primary residential custody to the father is supported by a sound and substantial basis in the record (see Matter of Coleman v Millington, 140 AD3d 1245[*3], 1247 [3d Dept 2016]).FN4

Aarons, Ceresia, Fisher and Mackey, JJ., concur.

ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Child Protective Services had also immediately issued a safety plan prohibiting the child from being left alone with the grandmother.

Footnote 2: The parties subsequently consented to a temporary order providing the father certain parenting time during the pendency of the proceedings.

Footnote 3: The attorney for the child similarly supports Family Court's award of physical custody (see Matter of Justin K. v Jutonynea L., 221 AD3d 1335, 1337 [3d Dept 2023]).

Footnote 4: As the father properly concedes, his complaints directed at Family Court's decision to award the mother primary medical decision-making authority are not properly before us given that he is not an appealing party (seeHecht v City of New York, 60 NY2d 57, 60 [1983]; Matter of Janeen MM. v Jean-Philippe NN., 183 AD3d 1029, 1030 n [3d Dept 2020], lv dismissed 35 NY3d 1079 [2020]; Matter of Carrie ZZ. v Aaron YY., 178 AD3d 1291, 1293 [3d Dept 2019]). Nonetheless, we find it important to note that, unlike in Matter of Barrett LL. v Melissa MM. (224 AD3d 942, 944 [3d Dept 2024], lv denied 42 NY3d 905 [2024]), Family Court made no finding that the mother minimized the child's behavioral concerns or that she bore responsibility for the parties' inability to effectively cooperate.